at all oral argument not to exceed 15 minutes per side. Mr. Whitaker for the appellate. May it please the court, my name is Bill Whitaker. I represent Todd and Carrie Zappone and their company Ohio Scrap Corporation. The issue here, there are actually two issues here. Whether a 19, whether a Bivens action, the statute of limitations for a Bivens action when it involves a conversion of property can be four years. That's something that we mentioned in our brief. I don't think that it's ever been considered. I don't think that the idea that there was a conversion has been considered in any of the Bivens cases that I've read where that was focused on. And I think that given the facts of this case and given the facts of that conversion only comes if somebody actually steals the money, then that it should apply. But I want to focus today on the equitable tolling. The equitable tolling is I think very important and I think applies to this case. We have to start with the facts because I think the facts implicate and inform the issue of the tolling. And there is no question what the allegations are in this case. And that is that the agents acting under the authority given to them by the United States government stole over $1.8 million from Mr. and Mrs. Zappone when they executed a search warrant on their premises in November 8th of 2012. And the result of them taking that money, it essentially shut down their business. And they had a very, very successful business. And it's a scrap metal and tow truck business. These are ordinary people who worked very hard and had built up a very successful business. And as a result of that raid, they lost $1.8 million and they also lost their ability to be able to function as a business for a long period of time. Those allegations have been made from day one in this case. We're only here, Mr. Whitaker, on the issues of timeliness, aren't we? That's right. But I think that when you're talking about equitable tolling, the nature of the issue also is a factor that needs to be considered. I know that what I'm – and I'm going to address the factors in this case about whether the defendants had notice, whether Mr. and Mrs. Zappone diligently pursued every aspect of prosecuting this case. And I believe that they did. And so obviously we've cited a number of cases, including Burnett and Tredgill, with regard to a general concept of equitable tolling. And the general concept is that fairness should apply, and that is that – and the court should take a look at it. Is it likely that the defendants had notice and were the Zappones doing everything they could to prosecute this claim? And I think that the evidence is very clear on the fact that they indeed were doing exactly that. The loss of all that money would get their attention, wouldn't it? You would think. You would think. And I've had talks with government's counsel about it. I would think that they would want to find out whether agents acting under the authority of the government stole this money. I think that the Zappones have made very credible claims. But the first formal notice that you can see by virtue of a pleading is the response to the forfeiture action filed by the government in which, by verified answer, the Zappones tell the United States government that, number one, the agents stole $1.81 million or lost it, which seems to be the case. It seems more unlikely, but – that they stole the money and that it adversely affected their business and ended up shutting down their business. Now, the government has said, well, there's no – just because you filed an answer and eventually it was a verified answer – and the facts aren't in dispute in this case. The facts are – have to be considered in the light favorable to the plaintiff, and those facts are the ones that were in the verified complaint as well as the facts that we've established with regard to what Mr. and Mrs. Zappone have been doing in terms of trying to prosecute this claim. Well, is that – I mean, from your brief, it seems like that's the argument that you want to pose, that they were distracted by their forfeiture case? No, not distracted. They thought – I mean, they thought that their attorney – and in this case it ended up being two attorneys, one initially and then Mr. Fedor and then Mr. Dunn later – that they were also pursuing at the same time their remedies under both Bivens and the FTCA. Was there some evidence presented to the court about the grounds for that thinking? Yes. They – there's an affidavit from the Zappones saying exactly that. We thought. Well, they were told – what they're saying is they were told that – by their attorneys that this was being done. In fact, they were told a letter had been sent. They were told that a Bivens action was being filed. Then a Bivens action was filed. They are ordinary people. They don't – they're not – A malpractice action perhaps, but when you choose your lawyer, then you're stuck with the consequences. Well, I understand that, but this is – I think – and that's a particularly interesting point with regard to equitable tolling. And that is – and many times a malpractice action would be – would provide a full remedy. It certainly wouldn't in this case where we're talking about millions of dollars in damages. I certainly can't rely on a malpractice action being able to – anybody to have the proceeds that a lawyer or a lawyer's insurance policy have the proceeds to satisfy the kind of loss that was suffered here. The thing that is so – that is sort of striking about this from my perspective is that on the one hand, these were folks who were capable of running a business and capable of having this amount of money in a safe in the business, whether it's the amount the government claims or the amount they claim. That is a lot of money in my book. And you would think that the people with the intelligence to build the business would also have – to their legal affairs, and it's claimed she kept meticulous count of the money. And at the same time, I mean, how can you think you have a vivid action if you've never seen a single piece of paper suggesting that you have and your attorney hasn't sent you one? And how can you be diligent if you hire new counsel and don't tell the entity for whom you're waiting – on whom you're waiting for a notice that you've changed counsel? I mean, it's just on the one hand, great attention to how much money they had. On the other hand, pretty much complete inattention to their legal affairs. I think you raise two good points, and I'll address them in order. The first one, how can they not be paying attention to their legal affairs if they're smart enough to run a business and make this amount of money and take meticulous notes? The very fact that that money was in the safe shows a certain naivete in terms of business manners. They had gotten a loan from Farmers Bank, and it's part of the allegations. And they – Farmers all of a sudden put a hold on their money for – I don't even remember what the reason was, but improperly. It wasn't part of the agreement. They had a fight to get it released because they need that money to run their business, and they immediately took all that – it was $700,000 at the time. They immediately took it all out and bought a safe on that same day because they didn't trust banks anymore, and that's why they were going to put it in there. So what – It doesn't have anything to do with not wanting to pay taxes? No, not at all. And as a matter of fact, that was – keep in mind the government has already, in the forfeiture action, agreed to give it all back. They have never been charged with a crime. They will never be charged with a crime. There is no indication of that. In the forfeiture action, they've agreed not only to give the whole 1.2 – We don't – the court doesn't have notice of that. You're telling us some things we won't – we don't know, do we? Is that in the record somewhere? I – we have certainly referenced the forfeiture action. No, that's true. That's definitely there. Yeah. But how it came out, not so much. Right, right. That's right. So – but – okay, I understand what you're saying, so I'll move on from that. The second action was how can they not be paying attention to the legal affairs? On the – when they signed that affidavit that was sent to the government for Fedor, that he sent – the attorney Fedor sent to the government, the only address that was on that form that they were aware of, because they signed it, was their address. So I think that, you know, it might have been – they might have thought that they were going to get it. But even if they didn't, well, obviously they knew the government had their address so that they might be informed. Is this in the affidavit or is this speculation on your part? I think the form itself is a part of the attachments that the government filed. You know, I think they filed it attached to their brief. And that's the only address that's in the power of attorney, although obviously it does reference Mr. Fedor. And – but they would have no way of knowing – now, obviously this goes directly to the FTCA claim – no way of knowing that the letter was sent just to Mr. Fedor for two reasons. Number one is obviously if he had already turned the file over to Mr. Dunn when the letter came back, he had an obligation to either let Mr. Dunn know or let the Zappones know. And I think that they justifiably could have relied on that. But more importantly for the equitable tolling, they also were aware that the government, with specific respect to the FTCA, had been given their address when it became – you know, when we were talking about it. I see that I only have one minute left. And so rather than going over all of the points, I think, of equitable tolling, because essentially they do deal with notice to the defendants. And I just got to say – and I wanted to say one thing about this. The government in their response says, well, just because you showed these allegations in response to the forfeiture action and put the government in – that aspect of the government on notice that the money was stolen and that they suffered big damages, that doesn't mean that the defendants themselves would have heard about it. And I think in just the application of common sense, it is inconceivable that the government wouldn't immediately talk – and we believe that they did, but I think just in terms of common sense – immediately talk to the defendants themselves, that is, the agents that were there at the time that we are alleging they stole this money. They were put on notice prior to the concluding of the statute of limitations because there is no reasonable United States attorney, an assistant United States attorney, that would get that information and not say, we've got to talk to the agents about this and get to the bottom of it. One of the things that we asked for from the government, but we weren't able to get, was did they ever conduct an investigation, and if so, what was the results of the investigation? But at any rate, I think that the concept of equitable tolling is if these elements are met, we have to – and I think the quote from – I think it's Kung Fu – I better say it exactly here – Kwai Fun Wong. We're looking at a fundamental fairness here, and if these people, in fact, have been put on notice, it's certainly reasonable to expect that they have. And these people themselves have been doing everything they can to try to prosecute it. They were certainly – and by the way, the Bivens complaint was filed. Pardon? Your red light has been on for quite a while. Thank you very much, Your Honor. I will sit down now. Good morning, Your Honors. Cheryl Wong for the government and the federal defendants. It is settled in the Supreme Court and in this court that the correct statute of limitations for Section 1983 claims and Bivens claims is a state's general personal injury statute of limitations. In Ohio, that is two years from the date of accrual from Section 2305.10. This court has said that in Browning v. Pendleton, which was an en banc opinion. I don't think Mr. Whitaker disagrees. Okay. I don't think so. Okay. Moving on to why the Bivens statute of limitations should not be tolled. The Zappones offer their participation in a forfeiture case as a sign of their diligence in prosecuting their rights as well as notice to the government. But the whole point of that forfeiture case was to determine the ownership to the $1.2 million that this district court there had jurisdiction over. The individual defendants didn't know that they might be individually liable for damages for $1.8 million. Now, I think it is definitely plausible that the AUSA in the forfeiture case would have gone to the agents and said, like, what's the story here because the Zappones brought up this $1.8 million. It is more of a leap to say to them, I think you guys might be personally liable for the $1.8 million. And in this case, the Zappones didn't just make a conversion claim for the $1.8 million. There's allegations about physical damage to the property, emotional distress, et cetera. So this is a completely different case. And I don't think in the parties' briefs there's been a case where the plaintiff's filing of two different cases on two different theories, different relief available, different defendants, could be counted as diligence and notice to the defendant. And moving on to why the Federal Tort Claims Act Statute of Limitations should not be told under either this court's five-element test or the Supreme Court's two-element test. This court's five-factor test focuses on the plaintiff's knowledge and notice, the reasonableness of any lack of knowledge or notice, the plaintiff's diligence, and prejudice to the defendant. In Jackson, which was a Federal Tort Claims Act, this court said that if the plaintiff had filed the administrative claim within the two-year period as what has happened here, it's not unreasonable for the district court to conclude that they should also know about the six-month post-denial period. And even stepping back from that, the Zappones, as Judge Gibbons said, were rather intelligent people who had built a business involving millions of dollars. And if they had filed a claim for $1.8 million with their lawyer, maybe at that time they might have said, well, what happens after this? Because I really want my $1.8 million back, and this is really important to me. And as far as what else they could have done if they never heard back from the lawyer or the IRS, they could have written the IRS, called up the IRS, and said, I have a different lawyer now. Can you send this to my new lawyer or send it to me? Tell me what's going on. And in the record, the government witness, the government affidavit said that with the claims, where the Zappones address was, there was also power of attorney forms with the lawyer's address. And when the plaintiff is, when a claimant is represented by a lawyer, the regulations say that they could, the IRS could send a denial to the lawyer or the plaintiff. And the IRS chose to send it to the lawyer in this case that they had on record. So this is neither the type of extraordinary circumstance and diligence that would rise to the level of permitting equitable tolling or in the case where the lack of knowledge or notice of the plaintiff was reasonable. So if the court doesn't have questions, I would ask this court to affirm. Thank you. Thank you, counsel. Did you reserve rebuttal time? I certainly intended to. Two minutes. Yeah, two minutes. Okay, thank you. I think that the, what the government says that it's certainly plausible that the United States attorney would have called the defendants and said, hey, guys, you're being accused of stealing $1.8 million. Yes, it absolutely is. And I think that satisfies the first prong. And the second prong, and I didn't finish my answer to Judge Gibbons' question the first time about, first of all, I mentioned that they were putting it in a safe because of the problem they had with this bank. And then secondly, but what they do is tow cars and buy junk cars. By the way, counsel, what's the standard of review for the district court's decision not to? Right. That is interesting in this case because the judge, if it was a motion to dismiss, it would just be, we could just say de novo. That would be what we were talking about. But we're not talking, he converted, the judge converted it to a motion for summary judgment but a limited summary judgment. And that's why the verified complaint was put in the, was part of the factual buildup for it. But that is that. The aspect, an aspect of this decision is the courts assessing the reliability of your clients. I didn't know, I guess not. I think it's all law. Right. I think it's all law. I think, yeah, because none of the facts are disputed and so therefore it's the same as a summary judgment which is. Whatever duty they had. Right. Which is, you know, they have to show under no plausible circumstances would equitable tolling apply here. And accepting all of the facts most favorably to the plaintiffs. Thank you, your honors. Thank you, counsel. The case will be submitted and there will be nothing to be, nothing further to be argued this morning. You may adjourn the court.